FILED
 2012 Jan-17 PM 02:44
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JUDY WARREN,** | ] |
| Plaintiff, | ] |
| vs. | ]   CV 11-J-1717-M |
| **MICHAEL J. ASTRUE,** **Commissioner of the Social Security Administration**, | ] |
| Defendant. | ] |

### MEMORANDUM OPINION

The plaintiff appeals from the decision of the Commissioner of Social Security denying her disability insurance benefits.  The case is now properly before the court.  *See* 42 U.S.C. § 405(g).

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining:  1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).

This case began in 2004 when the plaintiff filed an application for benefits claiming disability as of November 15, 1999, due to injuries received in a car wreck that date (R. 42-44, 384-385). That application was denied, and denied again after a hearing in front of an Administrative Law Judge ("ALJ"). Post-hearing, the plaintiff amended her alleged onset date to September 19, 2001 (R. 157, 547). Prior to this time, the plaintiff applied for and received Supplemental Security Income, based on a decision by a different ALJ, finding her medically eligible for such benefits as of September 19, 2001[1] (R. 375-376, 421). However, due to an increase in her husband's earnings, the plaintiff was found to be financially disqualified and her benefits therefore ceased in 2003 (R. 421). Thereafter, the plaintiff amended her prior years tax returns to establish self-employment income sufficient for her to have coverage through December 31, 2001, for purposes of disability insurance benefits (R. 421, 545). The court on appeal is thus faced solely with the issue of whether the plaintiff established entitlement to disability insurance benefits at any time between her alleged onset date of September 19, 2001, and December 31, 2001, her date last insured.

At the time of the most recent (2010) hearing before the ALJ, the plaintiff was 53 years old and had completed the tenth grade (R. 537-538). The plaintiff alleges an inability to work due to muscle spasms, lower back pain, hip pain, migraine headaches, and swelling in her hands and feet and legs (R. 542-543, 548-549). During the 2001 time

---

[1] The Title XVI claim file is not part of the Title II record and is not before this court. Thus, the court has no means by which to determine whether the evidence before the ALJ in the Title II claim is the same as the evidence before the ALJ in the Title XVI claim. The record does reflect that the plaintiff submitted new, relevant medical records to the Appeals Council after the first denial of her Title II claim.

period, she took Lortab, OxyContin and diazepam (R. 549). She also saw a chiropractor (R. 551), and tried acupuncture for her headaches (R. 552). She alleges limitations during that time from sitting for more than 30 or 45 minutes at a time and standing for more than 30 minutes (R. 390). She believed she could lift no more than ten pounds with her left hand and no weight with her right hand (R. 392). She did use a variety of exercise equipment recommended for her ailments (R. 391).

The ALJ found that the plaintiff's impairments which were severe were multiple level mild degenerative disease of the lumbar spine without evidence of nerve root impingement and mild right carpal tunnel syndrome (R. 425). The ALJ found that neither of these impairments constituted an impairment or combination of impairments listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 427).

The ALJ concluded that, as of her date last insured, the plaintiff had the residual functional capacity to perform a significant number of jobs that exist in the national economy (R. 430). Given this capacity, and the plaintiff's age, education and work experience, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act as of the date she was last insured for purposes of receiving Disability Insurance Benefits, December 31, 2001 (R. 430-431).

Pursuant to 20 C.F.R. § 404.950(f):

> Collateral estoppel -- Issue Preclusion. An issue at your hearing may be a fact that has been already decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act.... If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.

However, the Program Operations Manual System (POMS), which does not have the force of law, specifically excepts from the above regulation a prior favorable determination when the Title XVI record is in terminated status.[2]  POMS DI 11011.001. The policy statement does not provide any explanation for the foregoing.  The plaintiff argues that the prior ALJ decision finding the plaintiff disabled for purposes of SSI benefits is binding on this court based on the doctrine of res judicata (Plaintiff's memorandum, at 15).  While the plaintiff recognizes that the ALJ for the current decision relied on the POMS to find the prior decision non-binding, the plaintiff does not argue that the ALJ's reliance was misplaced and offers no basis for his argument that the ALJ should not have done so. The ALJ thoroughly explained the applicability of this section (R. 424-425), and the plaintiff does not directly challenge that finding of the ALJ.

---

[2]Further policy statements in Hearings, Appeals and Litigation Law Manual (HALLEX), a publication of the Social Security Administration's Office of Disability, Adjudication and Review, contains policy statements from the Appeals Council, as well as procedures, shed further light on the POMS with the explanation that

> The regulations at 20 CFR 404.957(c)(1) and 416.1457(c)(1) provide that administrative res judicata is present when all three of the conditions listed below exist:
>
> 1.  There has been a previous determination or decision under the same subpart with respect to the same party.
>
> 2.  The previous determination or decision was based on the same facts and on the same issue(s).
>
> 3. The previous determination or decision has become final by either administrative or judicial action.
>
> The regulations state that the ALJ may dismiss a request for hearing on the basis of administrative res judicata. Although this indicates that such dismissal is discretionary, when the requisite conditions are met administrative res judicata should be applied. It is possible to dismiss one or more issues on the basis of administrative res judicata, and still render a decision on other issues.

HALLEX I-2-4-40 (Res Judicata) (http://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-40.html)

Although policy statements such as POMS are not entitled to the same deference as implementing regulations, *see Christensen v. Harris County*, 529 U.S. 576, 587-88, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (discussing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), policy statements are "entitled to respect" to the extent that they have the "power to persuade." *Id.* at 587, 120 S.Ct. 1655 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); see also *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2nd Cir.2001) (upholding statutory interpretation in agency manual that was consistent with language and purpose of the law, noting that "even when deference is not required, an agency has a 'body of experience and informed judgment to which courts and litigants may properly resort for guidance' " (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161)).  See also *Stroup v. Barnhart* 327 F.3d 1258, 1262 -1263 (11th Cir.2003)(stating that while the POMS does not have the force of law, it can be persuasive)(citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2nd Cir.1998); *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir.1989); *Evelyn v. Schweiker*, 685 F.2d 351, 352 n. 5 (9th Cir.1982)).

Because the plaintiff fails to address the POMS regulation at all, she also fails to provide any persuasive basis to find it unreasonable.[3]  The language of the statute does not preclude the interpretation given it by the Commissioner. *See Barnhart v. Walton*, 535 U.S. 212, 218, 122 S.Ct. 1265 (2002). Thus, the court is left with the *Chevron* presumption that the Commissioner's interpretation of the statute should be controlling.  Applying those

---

[3]The plaintiff cites numerous cases where a second ALJ was held to be unable to change the decision of a prior ALJ.  None of those cases involve the unusual set of facts before this court, and none of them are binding on this court.

5

interpretations, the current appeal does not involve the same subsection as the prior decision, the court has no basis for determining that the same facts and evidence were before the Title II ALJ, and the plaintiff's prior benefit award under Title XVI was in a terminated status.  The court can find no error in the ALJ's determination that the Title XVI finding of disability was not binding on the plaintiff's Title II application.

Turning to the plaintiff's next argument, the plaintiff faults the ALJ for failing to include the plaintiff's migraine headaches as a severe impairment.  The ALJ offered a valid explanation for his determination that the plaintiff's allegations of migraine headaches did not qualify as a severe impairment (R. 426-427).  The medical records reflect the plaintiff complained of such headaches almost two years prior to her alleged onset date, but no evidence reflects the frequency or severity that plaintiff alleges.  A medical record from September 4, 1998, reflects the plaintiff complained of a migraine headache (R. 105). A medical record dated November 15, 1999, notes that the plaintiff has had a headache "since accident but was out in weather from 5:30-9:00 p.m. so thought it was just from cold weather" (R. 104).  In September 2000 Dr. Michael Watts recorded the plaintiff's complaints of pain in her back and neck which seemed to be triggering her headaches (R. 153).  Dr. Watts included a diagnosis of "migraines with and without aura" (R. 156).  The next reflection of a headache is in plaintiff's medical records from June 21, 2002 (R. 234). Dr. Thomas Martin, plaintiff's treating physician, completed a form on November 21, 2002, in which he stated he had seen the plaintiff 27 times from January 13, 1998, until October 21, 2002, and in his opinion, the plaintiff did not have an impairment "so severe as to prevent the person from working not only in his or her usual occupation but in any other

substantial gainful activity..." (R. 238).[4]  There is no evidence that the plaintiff had migraine headaches such that had more than a minimal effect on her ability to work during the relevant time period.  As such, the court finds no error in the ALJ's failure to include migraine headaches as a severe impairment.

The plaintiff next asserts that the finding that the plaintiff had the residual functional capacity to perform light work was not supported by substantial evidence.  Plaintiff's memorandum at 18.  However, the plaintiff wholly ignores the evidence before the ALJ of the medical expert who testified at the plaintiff's 2010 hearing.  He was asked his medical opinion as to the plaintiff's ability to engage in various work related activities (R. 514-515).  In response, he testified that in his opinion the plaintiff would have the limitations which were later adopted by the ALJ as the plaintiff's residual functional capacity (R. 515-516).  The ALJ specifically stated he afforded significant weight to the opinion of Dr. Levine, the medical expert (R. 430).  The court finds that Dr. Levine's opinions are clearly supported by the medical evidence in the record from the relevant time period.  While Dr. Levine found the plaintiff to be capable of more activity than Dr. Martin, these two medical opinions are not so diametrically opposed that acceptance of one required rejection of the other.  Rather, both doctors opined that the plaintiff was capable of performing substantial gainful activity.  In any event, the plaintiff does not argue that the ALJ's reliance on the opinion of Dr. Levine was erroneous.  As such, the court finds no reversible error in the ALJ's opinion of the plaintiff's RFC as of December 31, 2001.  *See e.g,* 20 C.F.R. § 404.1527(2)(f)(iii).

---

[4] At the same time, Dr. Martin completed a form in which he opined that the plaintiff suffered from pain but not to an extent that would preclude based work activities, and that the plaintiff was capable of performing sedentary work (R. 236-237).

The plaintiff argues that the ALJ's decision was not based on substantial evidence. Plaintiff's memorandum, at 21.  This argument seemingly is based on the failure to obtain medical records during the 2007 hearing.  The evidence is undisputed that such records were submitted to the Appeals Council on appeal of the 2007 decision, included with the appeal to the District Court of the 2007 decision, included in the remand of that decision to the Appeals Council and the Appeals Council remand of the same to the ALJ (R. 450-451).  As such, the court finds this argument to be moot.

Lastly, the plaintiff alleges that the ALJ failed to state adequate reasons for finding the plaintiff not credible.  Plaintiff's memorandum at 23.  This argument is also based on the failure to obtain the medical records discussed above, and the court finds this argument to be moot for the same reasons.

The court finds that the ALJ carefully considered the medical records.  Similarly, the court finds the ALJ properly applied the regulations, rules and procedures of the Commissioner in determining the Title XVI decision was not binding on him.  The court can find no error in the ALJ's stated reasons for finding the plaintiff not disabled as of December 31, 2001.

Based upon the court's evaluation of the evidence submitted to and adduced at the hearing before the Administrative Law Judge and considered by him and the Appeals Council, the court is satisfied that the decision of the Administrative Law Judge is based upon substantial evidence and that the Administrative Law Judge applied the correct legal standards.  Without  substituting its judgment for that of the Commissioner, this court can find no basis upon which to reverse the decision of the Administrative Law Judge.  *See*

*Bloodsworth*, 703 F.2d at 1239. Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 17th of January, 2012.

                                              INGE PRYTZ JOHNSON
                                              U.S. DISTRICT JUDGE